## HICKOK *v.* WOOD.

*(Circuit Court, S. D. New York. December 30, 1889.)*

**1. TRUSTS—RIGHT TO FOLLOW TRUST FUNDS.**
Defendant's father held the title to lands upon a secret trust for the complainant. He conveyed this land to the defendant without consideration, and upon a secret trust for himself. Defendant, by direction of his father, exchanged this land for the equity of redemption in other land, which was subject to several mortgages, taking the title in his own name upon a secret trust for his father. This exchange was made for the benefit of the complainant, and pursuant to a secret agreement between the complainant and the defendant's father. The defendant had no notice of the equities of the complainant in either parcel of land. Subsequently the defendant, at the direction of his father, conveyed the equity of redemption to satisfy the incumbrances. He had no notice at that time of the equities of the complainant. *Held,* that he incurred no liability to complainant as a trustee.

**2. SAME—RATIFICATION OF CONVEYANCE.**
*Also held,* upon the evidence, that the complainant had ratified the conveyance of the equity of redemption to satisfy the incumbrances.

In Equity.
*Carlisle Norwood, Jr.,* for complainant.
*A. H. Stoiber, (Joseph H. Choate,* of counsel,) for defendant.

WALLACE, J. In September, 1876, Fernando Wood conveyed to his son, the present defendant, certain real estate situate at Bergen Point, N. J., without consideration, and about the same time the defendant, at the request of Fernando Wood, exchanged this property with one Shaw for certain real estate in New York city known as the "Sixty-Third Street Property," then subject to certain mortgages. The complainant avers in the present bill of complaint that the Bergen Point property was in fact hers, the title being held upon a parol trust for her sole benefit by Fernando Wood; that the exchange for the Sixty-Third street property was made for her sole benefit, and upon a parol trust to that effect between Fernando Wood and herself; that she subsequently paid to Fernando Wood moneys sufficient to pay the mortgages upon the Sixty-Third street property, and for that purpose, which moneys were received by the defendant, who applied some of them, and retained others for his own benefit; and that the defendant has refused to account for the value of the Bergen Point property, or the money so received by him.

The Sixty-Third street property was conveyed by the defendant in May, 1879, to satisfy the incumbrances thereon, and the complainant insists that, as the defendant was not a purchaser of the property for a valuable consideration, it was impressed in his hands with the trust, as it would have been in the hands of Fernando Wood, and he must account for the value of her interest therein. The following facts are disclosed by the evidence in the record:

In the spring of 1872 the complainant applied to Fernando Wood for pecuniary assistance to enable her to acquire a home, consisting of a house and lot, at Bergen Point, N. J., where she was then residing with her husband. Mr. Wood advanced her $300, she herself paid in $250 towards the purchase, and June 12, 1872, she received a deed of the property from the prior owner, subject to two mortgages,—one for $4,000, and a second for $1,750; and thereupon she executed to Wood a mortgage for $300 to secure him for his loan. Complainant had no means of her own, and her relations with her husband were strained. When the $300 mortgage to Mr. Wood became due she was unable to meet it, and applied to him for further assistance; and soon after, in June, 1873, Mr. Wood paid up for her the $1,750 mortgage, with the accrued interest thereon, together with a small judgment which had been obtained against her, and the amounts, together with the amount of his own mortgage, were included in a new mortgage from her to him for $2,300. About this time the relations between her and Mr. Wood seem to have assumed a more confidential and intimate character; and somewhat later Mr. Wood foreclosed his mortgage, and in April, 1874, bought the property in at the foreclosure sale, and took a deed to himself, subject to the prior mortgage of $4,000. This was done for her benefit, and in part to protect her from any interference by her husband, from whom, in the mean time, she had become estranged. In July, 1874, Mr. Wood paid off the prior mortgage, which, with the accrued interest, amounted to $4,325, and in February, 1875, he gave her a receipt, acknowledging payment to him "in full of all demands on account of Bergen Point property." In the summer or fall of 1875 complainant became a member of Mr. Wood's household, and from that time until he died resided with him as one of his family, taking care of his children, and accompanying him wherever he went for any permanent stay. Soon afterwards he bought for her a $20,000 house on Fifty-Ninth street, New York city, the deed being executed to her, subject to a mortgage of $6,500, which he subsequently paid off. In the summer of 1876 he advised complainant to exchange the Bergen Point property for vacant real estate in the city of New York (the Sixty-Third street property) subject to mortgages on which $13,000 was unpaid. At this time Mr. Wood was financially embarrassed, and conveyed the title to all real estate held by him to his son, the defendant. Pursuant to an understanding between Mr. Wood and the complainant, an exchange of the Bergen Point property for the equity of redemption in the Sixty-Third street property was effected, and early in September, 1876, Mr. Wood executed a deed of the Bergen Point property to the defendant. The defendant executed a deed of that

property to the owner of the Sixty-Third street property, and thereupon the latter executed a deed of the property to the defendant, conveying it subject to the payment of the existing mortgages thereon. From that time until the spring of 1880 the defendant had the general management of the real estate belonging to his father in the city of New York, consisting of many different pieces of property, and, acting under the instructions of his father, executed many conveyances thereof. In August, 1878, Fernando Wood wrote to the defendant that he could not pay the mortgages, taxes, and assessments on the Sixty-Third street property; that there was then over $400 interest due, besides taxes and assessments, and he should abandon it. Foreclosure proceedings were commenced upon the mortgages. After various unsuccessful efforts to sell it, Fernando Wood finally procured Mr. Crimmens to purchase it, and assume the payment of the incumbrances, paying him $500 as a consideration for doing so. Thereupon, May 2, 1879, the defendant conveyed the property to Crimmens. The interest on the mortgages had been paid until 1878, in part by the defendant out of moneys of his father, and in part by Fernando Wood himself; but no part of the principal sum had been paid except the sum of $500, which was paid in February, 1878. Fernando Wood knew all the facts, and in making the conveyance to Crimmens the defendant acted merely as the instrument of his father.

From 1875 to 1879, inclusive, Fernando Wood was a member of congress, and resided a considerable part of his time in Washington. During these years, especially in 1877, the complainant received from him considerable sums of money as presents, some being given to her by him directly, and some indirectly, through other persons in Washington. After 1876 she also received the rents for the house he had given to her on Fifty-Ninth street, $150 to $200 per month, when it was not vacant. The moneys derived from these sources were intrusted by her to Mr. Wood to keep and invest for her, or to use temporarily for his own purposes. In the spring of 1877 there was a crisis in his financial troubles, and he prepared to prevent his creditors from stripping him of what he had. In April of that year he wrote complainant a letter, containing a statement that he had more than enough money of hers in his hands to pay the mortgages and taxes on the Sixty-Third street property. About this time he gave her a written receipt for $3,800, "to be applied, as required, for mortgages and taxes on Sixty-Third street property," and two others, without date, one for $1,200, and one for $1,050, "sent J. L. R. Wood [the defendant] on account of Sixty-Third street property." About the same time he also gave her three notes or due-bills, —two for $2,000 each, and one for $1,000. Until after the death of Fernando Wood the defendant had no information that the complainant had any interest in the Bergen Point property, or in the Sixty-Third street property, or that any of the moneys he had received from his father came directly or indirectly from the complainant. In May, 1880, being about to go abroad, he desired to have an adjustment with his father respecting the transactions in which he had acted as his agent;

and thereupon Fernando Wood executed to him a bond of indemnity to save him harmless from all acts done in his agency, specifying, among other things, the conveyance to Crimmens of the Sixty-Third street property. Fernando Wood died in February, 1881. At the time of his death complainant held his obligations, payable to her, for a large amount. Among them was a note dated June 17, 1879, for $8,000, "for moneys held in trust." Her claims against his estate, which were subsequently paid by his executors, amounted to $24,000.

The evidence in the record leaves no room for doubt that at the time Fernando Wood had the title to the Sixty-Third street property taken in the name of the defendant he intended to have the property held for the complainant's benefit, subject to the existing incumbrances. He expected that it would appreciate in value, and be a desirable investment for her. From that time until his expectations were disappointed, and the property became so depreciated that it was not worth the incumbrances upon it, he doubtless intended to set apart out of his gifts of money to her, or out of the moneys he treated as hers, enough to pay off the incumbrances, so that she should have the property free and clear. Apparently this intention sometimes took specific form, as when he gave her the receipts for money "to be applied to" or "on account of" that property. Those receipts may represent money which she had actually received, and then intrusted to him, or may represent sums intended as a present to her at the time, and which he designed to apply to the Sixty-Third street property. It may be that they were given merely as a part of his plan to protect her, and make a provision for her future at the expense of his creditors. Although he never sent the sums mentioned in these receipts to the defendant, and never applied them himself for the purposes indicated in the receipts, yet there is no reason to believe that he intended to mislead the complainant, or do her any injustice, for he always treated her with lavish generosity and kindness. He was so solicitous that she should be safe that he gave her written vouchers for everything he intended to regard as hers. The time came, however, when he was unwilling to carry the property any longer, partly because he was unable to do so conveniently, and partly because he no longer thought it a desirable investment. There is no direct evidence to that effect, but the circumstances of the case indicate most cogently that the complainant was fully aware of the situation at the time of the conveyance to Crimmens, and knew that the property was not worth any more than the incumbrances upon it. She was a constant companion of Fernando Wood after, as well as before, the conveyance of the property to Crimmens, visiting Europe with him, and staying there four or five months shortly after it took place. The note for $8,000 given to her "for moneys held in trust," shortly after the conveyance, was probably given by Fernando Wood and received by her as an equivalent for all the moneys which he had treated as hers, remaining in his hands, beyond the amount for which she held his obligations. There is no evidence that he held any moneys in trust for her, other than in this way, when the $8,000 note was made.

Upon these facts there is no equity in the complainant's case, and nothing which entitles her to favorable consideration at the expense of the defendant. The defendant has not profited by her loss, even if she has sustained any. He acted in good faith in all he did, so far as she and Fernando Wood were concerned. If he had surmised that she had any interest in the property, the facts which appear in the record would have justified him in assuming that his father had full authority to deal with it as he pleased. The bill is dismissed, with costs.